UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIE J. GRIMES,

        Plaintiff,                                      Case No. 1:21-cv-12363

v.                                                     Honorable Thomas L. Ludington
                                                            United States District Judge

SHERMAN CAMPBELL

        Defendant.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY**

In October 2021, Petitioner Willie J. Grimes, through counsel, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. Petitioner was convicted after a bench trial in the Wayne Circuit Court of two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, two counts of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, and three counts of felonious assault, MICH. COMP. LAWS § 750.82. He was sentenced as a fourth-time habitual felony offender to 450–720 months for the two convictions of assault with intent to commit murder.

Petitioner raises five claims in his habeas petition: (1) trial counsel was ineffective for failing to consult with a second defense expert witness, (2) the trial court erred in failing to appoint substitute counsel, (3) insufficient evidence was presented at trial to rebut Petitioner's insanity defense, (4) insufficient evidence was presented to prove an intent to kill, and (5) the prosecutor failed to adequately notify Petitioner of the habitual offender sentencing enhancement.

Because Petitioner's claims are without merit, this Court will deny the petition and a certificate of appealability.

## I.

The Michigan Court of Appeals summarized the facts of the case as follows:

Defendant has a history of mental illness, which includes diagnoses of schizophrenia, schizoaffective disorder, and bipolar disorder. Defendant had been receiving injections of the psychotropic drug Prolixin to manage his schizophrenia, but he discontinued those injections in August 2016, allegedly because he could not afford to travel to the provider's facility. When defendant was not taking Prolixin, he self-medicated with drugs and alcohol.

In October 2016, defendant was residing in the Dorchester Arms apartments in Detroit. Around 5:30 a.m. on October 18, 2016, the building's caretaker, Deborah Taiwo, discovered defendant standing on a second-story ledge, calling out his daughter's name. A few hours later, around 10:30 a.m., defendant confronted a tenant, Margo Speight, with a knife. Speight went to Taiwo's apartment to report defendant's behavior. While Speight and Taiwo were talking by the door, defendant forced his way into Taiwo's apartment. He stabbed Speight in her arm and side, and stabbed Taiwo in her arms, back, shoulder, and face. Taiwo called out to her boyfriend, Andre Talley, for help. Talley grabbed a bat and repeatedly swung it at defendant, forcing defendant out of the apartment. Defendant tried to force his way back inside until Talley warned him that he had a gun and was prepared to use it. At this point, defendant retreated to his apartment, where police officers eventually arrested him. Defendant informed the officers that he had not taken his medication and was hallucinating and the officers transported defendant to a hospital for treatment. The prosecution later charged defendant with two counts of AWIM, two counts of AWIGBH, and three counts of felonious assault.

Before trial, defendant informed the trial court of his intention to assert a defense of criminal insanity. Ellen Garver, Ph.D., evaluated defendant for criminal responsibility. Defendant reported that he had been having visual hallucinations of raccoons on the day of the stabbing incident and that he believed that his daughter had been transformed into a raccoon. According to defendant, he was trying to rescue his daughter when he climbed onto the ledge. He claimed that he stabbed Speight and Taiwo because he thought they were involved in his daughter's transformation into a raccoon. Defendant also reported to Dr. Garver that he had consumed alcohol, marijuana, and the drug "Lean," a mixture of cough syrup containing promethazine with codeine. Dr. Garver concluded that defendant was mentally ill within the definition of MICH. COMP. LAWS § 330.1400(g) on the date of the offense, but she was unable to conclude with medical certainty that he was legally insane pursuant to MICH. COMP. LAWS § 768.21a. She found that defendant's voluntary intoxication made it impossible to conclude within a reasonable clinical certainty that defendant lacked the capacity to appreciate the nature and quality or wrongfulness of his conduct or to conform his conduct to the law.

Defendant also underwent an independent evaluation by Patricia Wallace, Ph.D. In the evaluation, defendant acknowledged that he had consistently used alcohol, marijuana, and Lean for the past three years. Defendant informed Dr.

> Wallace that he had consumed alcohol on the day before the incident, but told Dr. Wallace that he did not consume alcohol on the day of the offense. Defendant could not provide details of the offense to Dr. Wallace; he only remembered generally that he assaulted Taiwo. Based upon defendant's mental-health history, his inability to describe his state of mind at the time of the offense, and the absence of any provocation, "preparation, strategy, reason, or explanation" for the offense, Dr. Wallace concluded that defendant was legally insane.
>
> Defendant waived his right to a jury trial. The trial court found that defendant had proven by a preponderance of the evidence that he was mentally ill, but failed to prove that he lacked substantial capacity either to appreciate the nature and quality or wrongfulness of his conduct or to conform his conduct to the requirements of the law. Accordingly, the trial court rejected defendant's insanity defense. The trial court found defendant guilty but mentally ill of all the charged counts. At sentencing, the trial court vacated the AWIGBH convictions because they were lesser included offenses of AWIM . . . .

*People v. Grimes*, No. 341417, 2020 WL 557559, at *1–2 (Mich. Ct. App. Feb. 4, 2020) (footnote omitted).

Following sentencing, Petitioner appealed in the Michigan Court of Appeals, raising two claims:

> I. The trial judge erred in ruling that Mr. Grimes did not prove by a preponderance of the evidence that he was legally insane at the time of the offense, in violation of the Due Process Clause of the U.S. Constitution. In the alternative, the trial judge erred by failing to make specific findings of fact and state conclusions of law.
> II. The evidence was insufficient to support the convictions for assault with intent to murder. In the alternative, the trial judge erred by failing to make specific findings of fact and state conclusions of law.

Petitioner also filed a supplemental *pro se* brief on appeal raising five additional claims:

> I. The defendant's trial counsel was ineffective in his representation violating the defendant's Sixth Amendment rights.
> II. This court must remand this case back to the trial court for an evidentiary hearing.
> III. The trial court erred in not dismissing Mr. Grimes's trial counsel when he voiced his dissatisfaction.
> IV. The defendant's trial judge decided this case using an inaccurate application of statutes. This case must be remanded for a new trial.
> V. The defendant must be resentenced due to the prosecution's failure to comply with the habitual offender statute.

The Michigan Court of Appeals granted Petitioner relief on his sentencing claim, and it remanded the case to the trial court to resentence Petitioner without the habitual offender enhancement. *People v. Grimes*, No. 341417, 2019 WL 1780638, at * 6–7 (Mich. Ct. App. Apr. 23, 2019). The prosecutor filed a motion for reconsideration. The Michigan Court of Appeals then vacated its opinion, and it issued a new opinion rejecting all Petitioner's claims on the merits. *Grimes*, 2020 WL 557559.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims he presented to the Michigan Court of Appeals. The Michigan Supreme Court denied the application. *People v. Grimes*, 950 N.W.2d 717 (Mich. 2020) (mem.).

## II.

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court either arrives at a conclusion opposite one reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.

### A.

Petitioner first claims that his trial counsel failed to consult with a second defense expert witness. He asserts that a second expert was necessary to account for the prosecution expert, who testified that she could not rule out voluntary intoxication as the sole cause of Petitioner's otherwise inexplicable conduct.

A brief description of Michigan insanity law and its interplay with voluntary intoxication is necessary. In Michigan, legal insanity is an affirmative defense requiring the defendant to prove by a preponderance of the evidence that, as a result of mental illness, he lacked substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law. MICH. COMP. LAWS §§ 768.21a(1), (3). Under the same statutory provision, however, a person under the influence of voluntarily consumed alcohol or controlled substances at the time of the offense "is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances." *Id.* §§ 768.21a(2), 768.37. But a defendant may nevertheless raise the insanity defense if his voluntary, continued use of mind-altering substances results in a settled condition of insanity before, during, and after the alleged offense. *See People v. Caulley*, 494 N.W.2d 853, 859 (Mich. Ct. App. 1992).

At Petitioner's trial, both sides introduced psychological experts. But only the prosecution introduced an expert who could testify about Petitioner's voluntary intoxication. During his interview with the prosecution expert, Petitioner admitted that he was under the influence of intoxicating substances, including "Lean," when he attacked the victims. ECF No. 6-6 at

PageID.596–601. Because the expert could not rule out "Lean" as the cause of Petitioner's hallucinations, she could not conclude to any degree of medical certainty whether Petitioner's mental illness caused his illegal actions. *Id.* at PageID.601.

The defense expert, on the other hand, did not address the impact of the "Lean," because Petitioner did not tell her about it. During his interview with the defense expert, the only intoxication that Petitioner mentioned was consuming alcohol "the day before" the offense. *Id.* at PageID.541–42. So based on the defense expert's limited view of the facts the only plausible cause of Petitioner's hallucinations was his mental illness.

Petitioner argues that his counsel was ineffective for failing to obtain a second opinion. ECF No. 1-1 at PageID.38 ("[W]here it is clear that Petitioner has a severe mental illness, is suffering a psychosis, and also is self-medicating, . . . trial counsel should have consulted with an expert in order to ascertain the effects of self-medicating upon Petitioner's underlying schizophrenia and related conditions."). His unstated premise is that defense counsel should have found another expert that would have been willing to opine that Petitioner's conduct resulted from his mental illness despite his "Lean" use.

This argument is a more focused version of the argument that he raised in his *pro se* brief on direct appeal. The merits of that claim, however, were rejected by the Michigan Court of Appeals as follows:

> Defendant argues that trial counsel was ineffective for failing to present additional and more specific evidence in support of his legal insanity defense. Defendant argues that trial counsel should have questioned the expert witnesses regarding defendant's diagnoses of schizophrenia, schizoaffective disorder, and bipolar disorder, but fails to explain what additional information could have been gleaned from this questioning or how further questioning would have aided his defense. Defendant argues that trial counsel was ineffective for failing to retain a third expert to evaluate Dr. Garver's and Dr. Wallace's opinions, but has not provided any evidence of an expert that would benefit his defense more than Dr. Wallace.

> Defendant also argues that trial counsel should have presented statistical evidence concerning the effects of alcohol, marijuana, and Lean. According to defendant, trial counsel should have elicited defendant's testimony regarding how recently he used Lean and marijuana before the incident. Again, however, defendant has not provided any evidence of studies beneficial to his defense, and defendant has not shown that further testimony on his Lean and marijuana use would have aided his defense.
>
> Finally, defendant argues that trial counsel should have questioned the witnesses regarding defendant's sleep deprivation and how it might have affected his behavior and state of mind. Sleep deprivation, however, is not a defense to assault and is not evidence of legal insanity. Defendant fails to explain how this evidence would have aided his defense. Defendant "bears the burden of establishing the factual predicate for his claim." *People v. Putman*, 309 Mich. App. 240, 248 (2015) (internal citation and quotation marks omitted). Because defendant has failed to show this Court that trial counsel failed to present evidence beneficial to defendant's case, his claim of ineffective assistance is without merit. For this same reason, defendant has also failed to demonstrate that remand for an evidentiary hearing is warranted. *See People v. McMillan*, 213 Mich. App. 134, 141-142 (1995).

*People v. Grimes*, No. 341417, 2020 WL 557559, at *5 (Mich. Ct. App. Feb. 4, 2020) (footnote omitted).

On federal habeas review, claims of ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer is the standard of familiar deficient performance plus prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). That is, a habeas petitioner must first show "that counsel's representation fell below an objective standard of reasonableness," and then that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (unpublished) (per curiam) (quoting *Strickland*, 466 U.S. at 694)). *Strickland* requires a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional

assistance[,]" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689), and that "under the circumstances, the challenged action 'might be considered sound trial strategy,'" *Bell*, 535 U.S. at 698 (citing *Strickland*, 466 U.S. at 689).

AEDPA provides the second layer of deference, under which the court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 571 U.S. at 18). "'The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Harrington*, 562 U.S. at 101.

The Michigan Court of Appeals did not unreasonably reject Plaintiff's ineffective-assistance claim. Plaintiff has not, in this Court or any other, offered evidence suggesting that a second expert witness would have testified that the cause of Plaintiff's conduct was his mental illness. As indicated, the prosecution expert testified that Petitioner's "Lean" use could have independently caused his hallucinations. ECF No. 6-6 at PageID.598–601. And Petitioner admitted to the prosecution expert that he could feel the effects of the "Lean" during the offense. *Id.* at PageID.601. Based on these admissions, it unclear whether another expert would have testified that Petitioner was legally insane despite his use of "Lean." *See, e.g.*, *Abdur'Rahman v. Bell*, 226 F.3d 696, 715 (6th Cir. 2000) (affirming district court's finding of no prejudice because there was "no evidence that [trial counsel] could have produced an expert to testify that [petitioner] was insane at the time of the stabbings").

Moreover, Petitioner has not demonstrated that his trial counsel was deficient. At trial, Petitioner testified that he was *not* under the influence of intoxicants during the offense. ECF No. 6-6 at PageID.570–71, 75–76. Rather, he claimed that he had been drinking the day before but

stopped between 11:00 PM and 12:00 AM—the same story he had told to the defense expert. *Id.* If the trial court had believed him, then it likely would have found the defense expert's testimony persuasive. Although trial counsel could have attempted to undercut Petitioner and to obtain a second opinion, his decision to present a unified defense based on Petitioner's version of events is a strategic decision that reviewing courts may not second guess. *See Abby*, 742 F.3d at 226. Accordingly, Petitioner has not demonstrated that his trial counsel was deficient for not seeking another expert opinion.

**B.**

Petitioner's second claim asserts that the trial court erred in failing to appoint substitute counsel after Petitioner expressed dissatisfaction with his attorney. This claim was also presented to the Michigan Court of Appeals in Petitioner's *pro se* brief. The Michigan Court of Appeals rejected this claim, too, on the merits as follows:

> In the instant case, the trial court inquired into defendant's reasons for wanting new counsel. Defendant complained that defense counsel had not provided him with the discovery packet and had only visited him once. The trial court confirmed that defense counsel would provide defendant with the discovery packet and visit defendant to discuss the case. There is no evidence that defense counsel failed to do so and defendant did not raise any issue regarding his counsel at any subsequent conference. Because the trial court addressed defendant's concerns to defendant's apparent satisfaction, we are unable to conclude that the trial court abused its discretion by denying defendant's motion to substitute counsel or by not inquiring into the matter further.

*People v. Grimes*, No. 341417, 2020 WL 557559, at *6 (Mich. Ct. App. Feb. 4, 2020) (unpublished) (per curiam).

The Michigan Court of Appeals's decision was neither contrary to nor an unreasonable application of clearly established federal law. The Sixth Amendment guarantees defendants in criminal cases the right to adequate representation but not the right to be represented by a particular attorney. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). Criminal

- 9 -

defendants who require appointed counsel do not have a right to counsel of choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006). "[W]hen a defendant is denied the counsel he prefers, the constitutional concern is whether he received an effective advocate." *Ray v. Curtis*, 21 F. App'x 333, 335 (6th Cir. 2001) (unpublished). Accordingly, an indigent defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution" of counsel. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *accord Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011). When evaluating a trial court's denial of a request to substitute counsel, a reviewing court considers the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the attorney and the defendant was so great that it resulted in a total lack of communication preventing an adequate defense. *Henness*, 644 F.3d at 321.

Here, Petitioner requested new counsel at a pretrial hearing approximately two months before trial. ECF No. 6-3 at PageID.296–98. This was the only time during the proceedings that Petitioner expressed dissatisfaction with his attorney. *Id.* At the hearing, Petitioner stated he did not believe that counsel was acting in his best interests, that counsel never gave him the discovery packet, that counsel never asked for a bond reduction, that counsel visited him only once, and that counsel waived the preliminary examination. *Id.* at PageID.298. The court considered Petitioner's complaints and directed defense counsel to consult with Petitioner and to provide him the discovery packet. *Id.* at PageID.299. At the next hearing date, approximately a month before trial, defense counsel stated that Petitioner would proceed to trial and present an insanity defense. ECF No. 6-4 at PageID.307. Petitioner did not renew his request for new counsel.

The Michigan Court of Appeals reasonably found that the trial court did not err in denying Petitioner's request for substitute counsel. The trial court adequately inquired into Petitioner's complaint, allowed him to voice his concerns, and directed defense counsel to consult with him. Petitioner did not object to the trial court's course of action. Nor did he renew his request for substitution at the later pretrial hearing. Further, based on the trial-court record, there is no evidence of a complete breakdown in the attorney-client relationship. Accordingly, the Michigan Court of Appeals reasonably rejected Petitioner's claim on the merits.

## C.

Petitioner's third claim asserts that the prosecutor failed to present sufficient evidence to establish that he was not legally insane when stabbed the victims. In his view, the prosecution's voluntary-intoxication argument is "simply unsupported by the evidence." ECF No. 1-1 at PageID.51.

Petitioner's third claim is not cognizable on habeas review. The Due Process Clause of the Fourteenth Amendment requires the prosecutor to present evidence establishing a criminal defendant's guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). If a defendant challenges the sufficiency of the evidence to establish guilt, then the reviewing court examines the evidence presented "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979); *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988). The Due Process Clause does not, however, cover challenges to the sufficiency of the evidence on issues that are not elements of the offense. *See Smith v United States*, 568 U.S. 106, 110 (2013), *Gall v. Parker*, 231 F.3d 265, 286–87, 307–08 (6th Cir. 2000) (addressing Kentucky law of insanity), *overruled on other grounds by Bowling v. Parker*, 344 F.3d 487, 501 n.3 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 740

(6th Cir. 1999) (holding that *Jackson* "does not implicate affirmative defenses, because proof of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime"), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000); *Allen*, 858 F.2d at 1200.

Under Michigan law, sanity is not a substantive element of criminal offenses. Rather, insanity is an affirmative defense that the defendant may raise and must establish by a preponderance of the evidence. *See* MICH. COMP. LAWS § 768.21a; *see also Duffy v. Foltz*, 804 F.2d 50, 54 (6th Cir. 1986) (noting that sanity is not an element of rape or kidnapping under Michigan law). As a result, under Michigan law, a claim that the prosecution failed to prove sanity is not cognizable on habeas review. *See Duffy*, 804 F.2d at 54; *Gall*, 231 F.3d at 304.

**D.**

Petitioner's fourth claim asserts that the prosecution introduced insufficient proof of intent. He argues that the only evidence of his intent was his statement at trial that he was trying to protect his daughter, whom he believed "had been transformed into a racoon and was in the ceiling." ECF No. 1-1 at PageID.58–59.

After reciting the applicable constitutional standard, the Michigan Court of Appeals rejected this claim on the merits as follows:

> Defendant argues that his conduct was surprising and inconsistent with his amicable past relationships with the victims. While this may be true, it does not mean that defendant lacked an intent to kill during this particular incident. Testimony indicated that defendant pursued Speight and Taiwo into Taiwo's apartment and stabbed them repeatedly and violently. The attack did not end until Talley forced defendant out of the apartment with a bat. Defendant then tried to reenter the apartment, and left only after Talley threatened to shoot him with a gun. Defendant's persistent and aggressive attempts to harm Taiwo and Speight were sufficient for a rational factfinder to conclude that defendant intended to murder the victims.

*People v. Grimes*, No. 341417, 2020 WL 557559, at *2–3 (Mich. Ct. App. Feb. 4, 2020) (unpublished) (per curiam) (footnote omitted).

The Michigan Court of Appeals' decision was reasonable. The relevant standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Habeas relief is warranted on a sufficiency-of-the-evidence claim only if the state court's application of that standard was unreasonable. *See* 28 U.S.C. § 2254(d)(2). The court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Even if Petitioner's ultimately confused purpose was to save his daughter, his intent, as evidenced by his trial testimony, was to kill the victims. As noted, Petitioner chased the victims inside an apartment and repeatedly stabbed each of them with a knife. His attack ended only after the boyfriend of one of the victims managed to fend off Petitioner with a baseball bat. Nothing in the record suggests that Petitioner would have stopped if the boyfriend had not intervened. And even after the boyfriend intervened Petitioner attempted to reenter the apartment—presumably for more stabbing. Accordingly, Petitioner's fourth claim was reasonably rejected by the Michigan Court of Appeals.

E.

Petitioner's fifth and final claim asserts that his due-process right to adequate notice was violated because the prosecutor did not comply with state law in notifying him that he would be charged as a habitual offender. The Michigan Court of Appeals rejected this claim, too, as follows:

> In this case, the prosecution sought the fourth-offender enhancement in the felony warrant and information, which complied in all relevant aspects to the form

> requirements set forth in MICH. COMP. LAWS § 769.13(2). Defendant does not challenge the trial court's compliance with MICH. COMP. LAWS § 769.13's form provision; rather, on appeal, defendant argues that he was not served with an amended information after the arraignment. The prosecution "impliedly concede[s]" that defendant was not properly served. Despite this apparent error, we conclude that defendant is not entitled to resentencing. "The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual-offender notification." *People v. Head*, 323 Mich. App. 526, 543–44 (2018). Here, defendant was arraigned on the information, which contained the relevant material required by MICH. COMP. LAWS § 769.13(2). Indeed, the habitual-offender enhancement was discussed at the arraignment in the context of plea negotiations between the parties. Moreover, the case was flagged by the register of actions as involving a habitual-offender enhancement. Defendant raised no substantive challenge to the enhancement at sentencing and, on appeal, makes no showing that the service error prejudiced his ability to present any relevant argument at sentencing. Accordingly, because the prosecution's apparent failure to serve post-arraignment notice of the its [sic] intent to seek an enhanced sentence did not prejudice defendant's ability to respond to the enhancement sought, we conclude that he is not entitled to resentencing. *See id.* at 542–47.

*Grimes*, 2020 WL 557559, at *6–7.

The Michigan Court of Appeals' decision was neither contrary to Supreme Court precedent nor an unreasonable application of federal law. First, Petitioner's claim that he received inadequate notice of the habitual-offender enhancement is not cognizable on federal habeas review. *See, e.g.*, *Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240-41 (E.D. Mich. 1993); *see also Threat v. Harry*, No. 2:17-CV-12465, 2018 U.S. Dist. LEXIS 89459, 2018 WL 2431707, *7 (E.D. Mich. May 30, 2018) (denying relief on similar claim); *MacArthur v. Curtin*, No. 13-CV-11307, 2014 WL 3767835, *15–16 (E.D. Mich. July 31, 2014) (adopting magistrate judge's report and collecting cases). Indeed, it is well settled that habeas relief may not be based on a perceived violation of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Second, due process does not require advance notice of a habitual-offender enhancement. Due process requires only that a defendant be given reasonable notice and an opportunity to be heard. *Oyler v. Boles*, 368 U.S. 448, 452 (1962). In this case, the record demonstrates that regardless of any error with the proof of service, Petitioner and defense counsel were aware of the habitual-offender enhancement, and that Petitioner had the opportunity to challenge it.

Because habeas relief is not warranted on this claim or any other, the petition for writ of habeas corpus will be denied.

**IV.**

In order to appeal this Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, the applicant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

Here, reasonable jurists would not debate this Court's procedural or substantive rulings. Therefore, a certificate of appealability will denied.

**V.**

Accordingly, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Dated: July 22, 2022                                          s/Thomas L. Ludington
                                                                                      THOMAS L. LUDINGTON
                                                                                      United States District Judge